**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DIONNE LAMBERT,                                    Case No. 1:20-cv-234

                    Plaintiff,                              Cole, J.
                                                           Bowman, M.J.
        v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

### REPORT AND RECOMMENDATION

Plaintiff Dionne Lambert filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents six claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the record as a whole.

### I.  Summary of Administrative Record

In June 2015, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), and a protective application for Supplement Security Income ("SSI"), alleging she became disabled more than eight years earlier, in March 2007, based upon a combination of physical and mental impairments. After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). At two hearings held on February 13, 2018 and on March 27, 2018, Plaintiff appeared with counsel and gave testimony before ALJ Renita Bivens; a vocational expert also testified. On May 24, 2018, the ALJ issued her first adverse written

1

decision, concluding that Plaintiff was not disabled. (Tr. 341-361). However, Plaintiff successfully challenged that decision to the Appeals Council, which determined that the ALJ had failed to include an evaluation of a treating source opinion. Because the failure to evaluate a medical source opinion constitutes legal error, the Appeals Council vacated the ALJ's first decision and remanded for further evaluation of the opinion evidence.

Upon remand, the same ALJ held three more hearings on December 13, 2018, March 14, 2019 and July 9, 2019.[1] (Tr. 65-179). Plaintiff again appeared with counsel at each hearing; a vocational expert also testified. At the March 14, 2019 hearing, Plaintiff amended her alleged onset date to June 21, 2011.[2] On September 18, 2019, ALJ Bivens issued a second lengthy adverse decision, concluding that Plaintiff was not disabled during the alleged period of disability (as amended) through the date of the ALJ's decision. (Tr. 23-53). This time, the Appeals Council declined further review, leaving the ALJ's 31-page decision intact as the final decision of the Commissioner. Plaintiff then filed this judicial appeal.

Plaintiff was 34 years old on her original alleged disability onset date, and 39 years old on the disability onset date as amended at the 2019 hearing. She remained in the same "younger individual" age category, at age 47, as of the date of the ALJ's most recent adverse decision. Plaintiff has a high school education, and testified that she attended two years of college. (Tr. 857). She is divorced with three grown children. She has been homeless at times, but as of the last set of hearings was living in a house with a roommate

---

[1] The administrative record in this case is unusually voluminous at 3499 pages, reflecting not only extensive medical and other records spanning a 12-year period, but also including five hearings and two ALJ decisions.
[2] Plaintiff ties the amended date to a trauma involving a former boyfriend that she alleges caused PTSD. Plaintiff remained insured, for purposes of DIB, only through December 31, 2011. Thus, Plaintiff was required to establish disability on or before that date in order to be entitled to DIB. (Tr. 24).

2

described in the record as a former fiancé.  Plaintiff has some semi-skilled past relevant work as a bill collector. (Tr. 49).  However, she has not engaged in substantial gainful activity ("SGA") since at least March 7, 2007 (her original alleged onset date), and has not engaged in SGA since her amended onset date.[3]  (Tr. 343, 26).

In her second decision, the ALJ determined that Plaintiff has severe impairments of "chronic right foot pain, plantar fasciitis fibromatosis with osteoarthritis of the 1st metatarsophalangeal joint (MPJ), stress fracture of the left foot, affective disorder, anxiety disorder, left hip pain, mild OA hips, myofascial pain and fibromyalgia, mild degenerative disc disease (DDD), spondylosis without myopathy or radiculopathy, [and] low back pain with left-sided sciatica."  (Tr. 26).  In addition, the ALJ noted a number of nonsevere impairments including a medical history of obstructive sleep apnea, sleep paralysis, hypersomnia, posttraumatic stress disorder (PTSD), somatoform disorder, bunionectomy, possible gout and GERD" plus an alleged personality disorder.  (Tr. 27).  In this judicial appeal, Plaintiff does not dispute the ALJ's determination that none of her impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability.

Considering all of Plaintiff's impairments, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a restricted range of light work, subject to the following limitations:

> She is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently.  She is able to engage in work at the workstation that can be performed whether sitting or standing and remain on task allowing the ability to alternate position to stand and/or walk for 6 hours per 8-hour day, 25

---

[3] Plaintiff worked as a housekeeper for approximately one month in 2015.  The record does not include information concerning her earnings for that period, which was too brief to constitute SGA.

minutes at a time and sit for 6 hours per 8-hour day 25 minutes at a time with normal breaks. The individual can frequently climb ramps and stairs and occasionally climb ladders, ropes and scaffold[s]. She can frequently balance, stoop, kneel, crouch, and occasionally crawl. She is able to perform occasional operation of bilateral foot controls. The person must avoid concentrated exposure to hazards such as unprotected heights. She is able to understand, remember, and carry out simple instructions and low-level detailed instructions but no complex instructions. She is able to maintain sufficient concentration and attention, persistence and pace to complete tasks with no fast pace or strict production demands. She can occasionally interact with the general public and with coworkers on a superficial level, meaning any interpersonal interactions is incidental to the work being performed and no team work or tandem task. Interaction with supervisors is occasional or no more than one third of the workday.

(Tr. 30). Based upon this RFC, the ALJ concluded that Plaintiff could not perform her prior work but still could perform other jobs that exist in significant numbers in the national economy, including weights/measure/checker clerk, bus monitor, and hand sorter/grater. (Tr. 50). Therefore, the ALJ determined that Plaintiff was not under a disability.

In this appeal, Plaintiff sets forth six enumerated claims (plus subclaims) in a loosely organized structure. As enumerated, Plaintiff asserts that the ALJ erred: (1) by failing to adequately explain the basis for Plaintiff's physical and mental RFC limitations in light of the medical opinion evidence; (2) by improperly evaluating Plaintiff's fibromyalgia; (3) by failing to include PTSD and chronic pain disorder as severe impairments; (4) by improperly evaluating the medical opinion evidence; (5) by improperly assessing Plaintiff's subjective complaints; and (6) by failing to include all relevant limitations in the hypothetical presented to the vocational expert. (Doc. 7). For the convenience of the Court, the undersigned combines discussion of interrelated claims.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or

4

mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of

Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

## B. Plaintiff's Claims

### 1. Medical Opinion Evidence and the ALJ's RFC Assessment

Plaintiff's first and fourth claims of error attack the ALJ's assessment of the opinion evidence concerning her physical impairments, arguing that evidence is inconsistent with the reduced range of light work determined as Plaintiff's RFC. Plaintiff also challenges the ALJ's rejection of the opinion of her treating psychiatrist. The undersigned finds the ALJ's analysis to be substantially supported and free from reversible error.

Until recent revisions, social security regulations provided for a hierarchy in the evaluation of medical opinion evidence, with the opinions of treating physicians to be given the most weight, and the opinions of examining consultants to be given greater weight than the opinions of non-examining consultants.[4] For claims filed before March

---

[4] Effective March 27, 2017, many long-standing regulations have been significantly revised or rescinded, with the old hierarchy discarded. For example, a new rule set forth in 20 C.F.R. § 404.1520c entirely

6

27, 2017 like the one presented, the regulations specify that "[g]enerally," an ALJ is required to "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you," with the most weight, or "controlling weight" to be given to treating physicians. 20 C.F.R. § 404.1527(c)(1) and (2). However, despite that general presumption, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight. Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996). In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion, such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Com'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c)(2).

Plaintiff submitted medical source opinions concerning physical limitations from two treating physicians: her podiatrist, Dr. Rahn, and an internal medical specialist, Dr. Welford. She also submitted opinions concerning mental limitations from her treating psychiatrist, Dr. Khallily.[5] The ALJ largely rejected the work-preclusive physical limitations offered by Dr. Welford, and instead fashioned Plaintiff's RFC based upon the opinions of Dr. Rahn and agency consultants, with a focus on the medical evidence and other evidence in the record as a whole. The ALJ similarly rejected the work-preclusive

---

replaces the treating physician rule previously set forth in 20 C.F.R. § 404.1527. However, Plaintiff filed the instant claim in 2015; therefore, the prior "treating physician rule" and related SSRs and case law continue to apply to this case.

[5] Multiple spellings of this physician's name appear in the record. For convenience, the spelling utilized by the ALJ is used by the undersigned.

limitations offered by Dr. Khallily and instead assessed Plaintiff's mental RFC based upon more "moderate" limitations offered by agency consultants and the ALJ's review of the record as a whole.

An ALJ must provide "good reasons" for rejecting the opinions of a treating physician, but it is permissible [i]n appropriate circumstances" to give greater weight to the opinions of state agency medical consultants than to "the opinions of treating or examining sources." *Blakley*, 581 F.3d at 409, quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3 (July 2, 1996). In *Blakley*, the Sixth Circuit reversed because the state non-examining sources on whom the ALJ relied did not have the opportunity to review "much of the over 300 pages of medical treatment ... by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Id*. As discussed below, the ALJ in this case committed no such error. Instead, the ALJ provided good reasons for evaluating each treating physician opinion. Thus, the undersigned finds no reversible error in the ALJ's assessment of the medical opinion evidence or in Plaintiff's RFC.

### a. The ALJ's Assessment of Opinion and Medical Evidence Supporting Plaintiff's Physical RFC

In fashioning Plaintiff's physical RFC, the ALJ gave "[c]onsiderable weight" to the July 31, 2017 opinions of treating podiatrist Dr. Rahn, but rejected his standing/walking limitations, which would have limited Plaintiff to sedentary work. (Tr. 43). She also gave "some weight" to the podiatrist's later 2018 opinions and to two earlier opinions of non-examining agency physicians, (Tr. 45, 48), with the least amount of weight given to two check-box form opinions signed by treating physician Dr. Welford.

Notably, Plaintiff agrees with the weight given to the agency consultants. (*See* Doc 7 at 10). The ALJ disagreed with the consulting opinions that there was insufficient

8

evidence to identify any severe physical impairments and instead found multiple severe physical impairments.  (Tr. 26).  However, the ALJ mostly agreed  with the consulting opinions that Plaintiff could perform light work with occasional operation of left foot controls, frequent climbing of ramps and stairs, kneeling, and crouching, and occasional climbing of ladders, ropes or scaffolds and crouching.  (Tr. 48).

Light work can require up to 6 hours of standing and walking.  In a few areas of disagreement with agency consultants, the ALJ "reduce[d] the State Agency's functional assessment to include a sit/stand alternative based upon pain and "intermittent wearing of a boot" following foot procedures. (Tr. 48).  The ALJ also increased Plaintiff's foot control limitation to a bilateral one.  (Tr. 30).  The physical RFC determined by the ALJ significantly limits the range of light work by specifying that Plaintiff must be able to sit or stand and alternate her position every 25 minutes with normal breaks for a total of no more than 6 hours of alternate standing/walking or sitting in an 8-hour day.  (*Id.*)

In fashioning the referenced RFC as one that still allows "light" rather than merely "sedentary" work, the ALJ rejected Dr. Rahn's July 2017 opinion that Plaintiff was capable of no more than 2 hours of standing/walking. Plaintiff argues that the failure to adopt her treating physician's sedentary postural limitation was error.[6]  I disagree.  As the ALJ explains, Dr. Rahn's July 2017 opinions were rendered shortly after a surgical procedure on Plaintiff's right foot, at a time when Dr. Rahn opined that Plaintiff's prognosis was "good." (Tr. 1541).  On the same form, Dr. Rahn opined that Plaintiff would have no difficultly using public transportation, or carrying out routine ambulatory activities such as

---

[6]Plaintiff mistakenly refers to him as "Dr. Rahm."

shopping and banking. (*Id*.). As support for his opinion that Plaintiff required an assistive device at that time, Dr. Rahn specified that she was "postop." (Tr. 43).

An ALJ need not adopt all findings in a medical opinion when determining an RFC. *See Poe v. Com'r of Soc. Sec*., 342 Fed. Appx. 149, 157 (6th Cir. 2009). The ALJ reasonably explained, with references to the timing of Plaintiff's surgeries and the completion date of the forms as well as extensive references to multiple records where Plaintiff did not use an assistive device and wore normal footgear, why the ALJ believed that Plaintiff was capable of greater walking and standing than Dr. Rahn opined at her July 2017 post-operative visit. In addition, it is worth noting that the postural limitations determined by the ALJ are not inconsistent with sedentary work because the ALJ determined she could sit for 6 hours as long as she could change positions at will. Although the VE did not separately testify to sedentary work that Plaintiff could perform, the VE did testify that all jobs for which he provided testimony could be performed either sitting or standing, and even if Plaintiff "occasionally used a cane to go to and from the work station, carrying objects in the free hand." (Tr. 72-73).

Although Plaintiff alleges error in the failure of the ALJ to adopt Dr. Rahn's postural limitations, she simultaneously argues that the ALJ gave too much weight to Dr. Rahn in other respects. She complains that the ALJ erred by failing to discuss that Dr. Rahn is a podiatrist who did not treat her for her left hip pain, her degenerative disc disease, fibromyalgia, mental impairments, or myofascial pain. (Doc. 7 at 11). However, contrary to Plaintiff's assertion, the ALJ referenced Dr. Rahn's medical specialty several times in her opinion. (*See* Tr. 35, 42).

Plaintiff next argues that the ALJ should have given greater weight to Dr. Rahn's November 2018 opinions, which were more limiting than his July 2017 opinions. Plaintiff

10

maintains that her foot condition deteriorated, leading to the more negative assessment. For example, she continued to report right foot pain to Dr. Rahn in both August and November 2017. (Tr. 2154-2170). However, the undersigned's review of the referenced records confirms continuing improvement post-operatively, (*see* Tr. 2171), to the point that her pain was "resolved" at the surgical site and no more than "mild" elsewhere. (Tr. 2161). Although Plaintiff also complained of left heel pain, Dr. Rahn opined that those symptoms were due to that foot being "overloaded" after the right foot surgery, and found no edema and normal pulses, lower extremity strength and range of motion on exam. (Tr. 42, 2154-55, 2165). He prescribed stretching and ice as well as custom orthotics. At Plaintiff's request in September 2017 he administered a cortisone shot which temporarily "resolved" her left heel pain, allowing her to wear normal shoes. (Tr. 42, 2154, 2164). On November 20, 2017, she presented with flare up of foot pain but that was caused by moving from her apartment. She was still wearing normal shoes and reported she had lost a foot splint prescribed for nighttime use. (Tr. 42, 2154).

It is true that Plaintiff's left heel pain complaints continued episodically, leading Dr. Rahn to perform a second plantar fasciitis release surgery on that foot. However, the records, as discussed by the ALJ, do not support an unrelenting degree of disabling foot pain. Following her left foot surgery, in February 2018, Plaintiff experienced pain and swelling in her left foot that again was attributable to her post-operative status. (*See* Tr. 2808-2810).

In October 2018, Plaintiff tearfully expressed frustration over continuing foot pain despite multiple procedures over several years of treatment with Dr. Rahn. (Tr. 2882). However, the same record reflects that she was "also upset that she has been denied for her Social Security disability" and "was watching her grandson this week, so she was

much more active than normal." (Tr. 2879).   Shortly after that tearful visit, Dr. Rahn completed his November 2018 medical source form.  (Tr. 2945-2949).  In his more limiting November 2018 opinions, Dr. Rahn opined that Plaintiff could stand for only 10 minutes at a time before needing to walk or sit, and could stand/walk less than 2 hours but could sit for more than 6 hours, and would require shifting positions at will. (Tr. 2946).  However, even on the more restrictive November 2018 form, Dr. Rahn opined that Plaintiff was capable of work that she could perform while sitting most of the day.  (Tr. 45, citing Tr. 2946).

Dr. Rahn also opined in November 2018 that Plaintiff could lift less than ten pounds rarely, would be off-task more than 25% of the day, and would miss over four days of work per month.  (Tr. 2947 - 2949).  Yet he clearly stated:  "I do not eval[uate] upper extremity" and "I do not evaluate psychological conditions" which undermine his (otherwise unsupported) lifting and concentration limitations. (*See* Tr. 2945, 2947). He provided no explanation for his opinion on the number of days Plaintiff would miss work. Therefore, the undersigned finds no error in the ALJ's rejection of the referenced lifting and concentration opinions, or of the anticipated days missed from work.

The ALJ's lengthy analysis of Dr. Rahn's 2017 and 2018 opinions is extremely thorough. A treating physician's opinions are not entitled to controlling weight when they are not well supported or when they are inconsistent with other substantial evidence in the record.  Here, the ALJ explained her rejection of certain opinions on both grounds. Although Dr. Rahn opined both in 2017 and in 2018 that Plaintiff would need a cane, which the VE testified was not work-preclusive (Tr. 73), that opinion related to Plaintiff's post-operative status on the dates that the forms were completed. (Tr. 45). In later records, Dr. Rahn reported: "Weight-bearing status, Pt. may transition to normal shoe

gear as tolerated," and February through May 2019 records reflect no use of a cane, rollator walker or elevating her feet. (Tr. 46). Dr. Rahn's treatment records did not support a limitation requiring her to elevate her legs on any continuous or consistent basis. (*Id.*) Records post-dating his November 2018 opinions reflect much improved physical findings, with Plaintiff reporting a 70% reduction of her pain and an increase in activity. (Tr. 45-46). In short, the ALJs analysis of Dr. Rahn's RFC opinions is substantially supported.

I also find no error in the ALJ's analysis of the RFC opinions of treating physician Dr. Welford.[7] The Appeals Council initially remanded because the ALJ's first decision analyzed (and mostly rejected) a September 26, 2017 check-box medical source statement form signed by Dr. Welford but failed to discuss a second medical source statement dated a month earlier, August 29, 2017. (*See* Tr. 1583-1588). Plaintiff argues that the ALJ should have given controlling weight to both Dr. Welford's August and September 2017 opinions; both opinions contain work-preclusive limitations..

On the August form, Dr. Welford cites to Plaintiff's diagnoses of "fibromyalgia" and "depression" but otherwise relies exclusively on an August 2017 Functional Capacity Evaluation ("FCE") for support. (*See generally*, Tr. 1589-1592).[8] "For any and all further details see Funct. Capacity Eval!" (Tr. 1588). Among the work-preclusive opinions on the August form is Dr. Welford's opinion that Plaintiff would be able to use her hands, fingers, and arms less than 1% of the time during an eight-hour workday. (Tr. 1587). The September 26, 2017 form, although signed by Dr. Welford, is in different penmanship

---

[7] Plaintiff misspells this physician's name as Dr. Wellford.
[8] A similar (unsigned) FCE form appears at Tr. 1595-1599.

than the August 2017 form. [9]   The September 2017 form does not refer to Plaintiff's fibromyalgia and lists no diagnoses but for "neck pain" and "bilateral hip pain." Unlike the August form, the September form does not cite to the FCE or to anything else in support. Instead, multiple notations invite the reader to "refer to physician."  In contrast to the "less than 1%" opinions rendered less than a month earlier, in September 2017, Dr. Welford opined that Plaintiff could use her hands and fingers 75% of the time, and use her arms for 25% of the workday.  No reasons are suggested for the improvement.

The ALJ gave "little weight" to Dr. Welford's August 2017 statement and "[l]imited weight" to his September 2017 statement.  With respect to the August opinion, the ALJ explained that it was not well-supported because Dr. Welford relied solely on the FCE and the diagnosis of fibromyalgia.  However, with respect to the diagnosis of fibromyalgia, he did not offer any evidence that

> definitively confirm[s] that the claimant has the requisite number of tender point findings and there is no evidence that Dr. Welford has excluded other impairments [besides fibromyalgia] as required in SSR 12-2p.  Further he opined that the claimant could sit, stand, walk less than two hours per eight-hour day which is inconsistent with the claimant's report during the FCE while wearing a walking boot with stitches in her foot of her ability to spend about three hours up moving around. (*Id*. at 8).  He also opined that the clamant was able to sit 15 minutes at one time and stand 15 minutes at one time.  The claimant reported she is able to stand up to 20 minutes at one time.   This opinion is unpersuasive for the same reasons that [the September 2017] opinion …is unpersuasive.

(Tr. 46-47).

Plaintiff argues that the ALJ's analysis of the August 2017 opinions failed to adequately consider the supporting FCE.  In *Hargett v. Commissioner of Social Security*,

---

[9] The handwritten notations appear to have been penned by the physical therapist who completed the FCE form, based upon the undersigned's admittedly inexpert comparison of the writing as well as the multiple handwritten references (discussed by the ALJ) that direct the reader to "refer to physician." The PT's name also is printed on the September form but he did not sign it.

964 F.3d 546 (6th Cir. 2020), a decision that post-dated the ALJ's decision, the Sixth Circuit resolved a circuit split among the trial courts and held that when an FCE initially prepared by a physical therapist is reviewed and co-signed by a treating physician, that FCE must be considered as an opinion of the treating physician even when the non-treating source who prepared the FCE is not part of the same treatment team. *See id*. at 553 (noting that treating physician referred plaintiff for FCE and signed off on the FCE results, and holding that under those circumstances, "the ALJ should have considered the FCE as a treating-source opinion."). The *Hargett* court remanded because the ALJ had rejected the FCE primarily because it "was not based on a treating relationship" (despite being co-signed by a treating source) and provided only "bare, conclusory statements" for rejecting the FCE's postural limitations. *Id.* at 553-54.

In contrast to *Hargett*, I find no reversible error, even though the ALJ here partially discounted the August FCE because the PT examined Plaintiff "only on one occasion and not in a treating context." (Tr. 44). That particular statement *might* be viewed as error under *Hargett*,[10] but any error is harmless on the record presented. Unlike in *Hargett*, here the ALJ provided much more than "bare, conclusory statements" for rejecting the opinions contained in the FCE, explaining precisely why the FCE opinions were not well supported but instead were "inconsistent with the record as a whole, including the examination findings and the claimant's own reports of functioning…as well as [the PT's] own findings." (Tr. 44).

---

[10] In *Hargett*, the treating physician referred the plaintiff for the FCE and co-signed the FCE after review. A different treating physician referred Plaintiff for the FCE in this case and Dr. Welford did not co-sign the FCE. However, arguably, Dr. Welford's express reliance on and adoption of that FCE in the August 29, 2017 medical source statement might be considered equivalent to co-signing the FCE under *Hargett*.

In addition to her expansive analysis of the medical records throughout her opinion – substantial evidence that contradicts the extreme limitations in the FCE throughout the relevant time period - the ALJ noted that the FCE was performed mere weeks after Plaintiff's foot surgery.  In relevant part, the ALJ explained:

> Notably, the claimant was in a compromised physical condition during the FCE wearing a walking boot with stitches in her right foot due to a plantar fasciitis release in July 2017 (*Id.* at 3). Further, as to any opinion regarding manipulative limitations, the claimant appeared using a wooden cane with no rubber tip, with her right upper extremity, which demonstrates the ability to grip using the right hand.  The FCE also indicated that the claimant was relying on both arms to ascend and descend stairs. (*Id.* at 4). The FCE also found the claimant demonstrated no specific difficulty manipulating bolts using her hands together. (*Id.* at 5). It was observed the claimant was not tested on overhead use of her hands (*Id.*).  It was also noted the claimant was able to pick up a pen from the floor and only briefly used external support when bending down (*Id.*).  Also of note, MRI findings of record have been relatively unremarkable (33F/5399999, 540) and the claimant's treating sources have observed medications were helping to control her pain and increase functionality and activity (*Id.* at 540).  Notably, in February 2019, treatment notes indicate negative left hand x-rays multiple times and notes that it is unlikely to be gout and her RF and anti-CCP were both negative….

(Tr. 44).

The September 2017 opinions of Dr. Welford  - expressed on a slightly different check-box form than the August 2017 opinions - do not cite to the FCE at all or to the diagnosis of fibromyalgia.  Instead, the September form merely lists "diagnoses" of neck pain and bilateral hip pain with no mention of foot pain.[11] On the basis of the referenced pain, Dr. Welford opines that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces, could not use standard public transportation; could not carry

---

[11] The "diagnosis" of neck pain is somewhat at odds with the record, which contains relatively few reports of cervical or neck pain as opposed to complaints of low back pain. The ALJ found severe back pain impairments including mild degenerative disc disease (DDD) and spondylosis without myopathy or radiculopathy, along with low back pain with left-sided sciatica, but no cervical spine impairments.  (Tr. 26).

out routine ambulatory activities; and could not climb several stairs at a reasonable pace

with the use of only a single handrail..  The ALJ explained that the opinion

> has minimal persuasiveness as it is inconsistent with the overall medical evidence of record and the claimant's own reports, including her reports that she travels by using public transportation and walking and shops for food (37F/4, testimony).  Dr. Welford opined that the claimant required an assistive device to ambulate and noted she used a wooden cane.  He did not opine whether she had swelling in the lower extremity, but indicated one should refer to her physician. … [T]he claimant did not report swelling of the lower extremity during the functional capacity evaluation.
>
> Dr. Welford opined the claimant could stand/walk for less than 2 hours and sit for about 2 hours; would need a job that permits shifting positions at will from sitting, standing, or walking; would need to include periods of walking around during an 8-hour workday every 20 minutes for 1 to 2 minutes and every 20 minutes; would likely need to stand; would need unscheduled breaks at least 4-5 times; would be unlikely to tolerate sustained work pace activity; would need to rest 15 minutes before returning to work; would need to lie down or sit in a comfortable chair when on breaks; would require the use of a cane; could lift/carry less than 10 pounds rarely; could never or rarely twist, rarely stoop  and climb stairs, never crouch/squat, never climb ladders…; would be off task 25%, also noting to refer to a physician; would be incapable of even low stress work; would have good days and bad days; and would be absent more than 4 days per month.  Dr. Welford indicated one should refer to the claimant's physician for signs, clinical findings, and laboratory test results that are consistent with the functional limitations described.  Again, the opinion is minimally persuasive and limited weight is given, as Dr. Welford frequently indicates to refer to the physician for support of limitations ascribed to the claimant without specifically identifying medical support for the opinion.  Dr. Welford's opinion is not entirely consistent with the overall medical evidence of record and the claimant's own reports.  For example, …the claimant reported using public transportation and engaging in various activities of daily living.  Further, February 2019 treatment notes indicate negative left hand x-rays and note her RF and anti-CCP were both negative (50F\4, 22).  A May 2019 examination found the claimant to have normal muscle strength 5/5 proximally and distally, in her upper and lower extremities, intact sensation (50F/36).  Further, …the claimant appeared using a wooden cane with no rubber tip in her right upper extremity which demonstrates her ability to grip using her right hand. The functional capacity evaluation…also found the claimant demonstrated no specific difficulty manipulating nuts and bolts using her hands (18F/5).  Although the claimant has used an assistive device at various times … she is not entirely non-weight bearing and has used an assistive device intermittently, generally associated with surgical procedures/boot.  In addition, physical therapy records indicate that in August 2017, the claimant reported she was able to sit for 15 minutes at a

17

time in a comfortable chair and stand for 15 to 20 minutes and walk an unknown number of minutes and she estimated spending a total of 3 hours per day moving around and 7 hours per day sitting (18F/3).  She estimated she could lift 8 pounds and rated her pain only 4.5 out of 10, with her best pain being 2 out of 10 over the past month (Id.).  Dr. Welford's opinion is also not entirely consistent with the opinion of Dr. Michael Rahn, the claimant's treating podiatrist, who opined the claimant was able to ambulate effectively to walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation including climbing in and out of a bus, and climbing several stairs using only a single handrail. (16F/2).  Dr. Rahn also opined that the claimant did not need an assistive device to ambulate, but for standing/walking using a cane occasionally or another assistive device as she was postop but did not need to elevate her feet…. Dr. Rahn's opinion suggests that the only reason the claimant is using a cane is due to her recent procedure…

(Tr. 41-42).

In addition to giving greater weight to the opinions of treating physician Dr. Rahn, the ALJ observed that Plaintiff had complained of "foot and back pain that worsened after moving houses, as she had to do a lot of heavy lifting and moving, which suggests abilities greater than that opined by Dr. Welford."  (Tr. 42).  Last, the ALJ discussed other records from the treating physician, Dr. Burroughs, who ordered the FCE.  Dr. Burroughs found "normal range of motion of the neck, normal range of motion on musculoskeletal examination, and normal right ankle, with right foot tenderness but no bony tenderness, swelling, edema, deformity, or pain." (*Id*.)  At the same examination, Plaintiff had normal strength and reflexes in all four extremities….. (*Id*.)

In sum, I find the ALJ's analysis of both August and September 2017 opinions of Dr. Welford to be substantially supported by the record as a whole, as is the ALJ's formulation of Plaintiff's physical RFC.  Not only were Dr. Welford's opinions very poorly supported (if at all) but as the ALJ pointed out, many of the opinions were in conflict with Plaintiff's own reports of walking, using public transportation, and grocery shopping.  (Tr. 41, 166-67, 221, 947, 2802).

### b. The ALJ's Assessment of Opinion and Medical Evidence Supporting Plaintiff's Mental RFC

The ALJ's analysis of the opinions of her treating psychiatrist and corresponding assessment of Plaintiff's mental RFC is also substantially supported by the record as a whole.  The ALJ found Plaintiff's affective disorder and anxiety disorder to be severe, but found insufficient support for an alleged personality disorder.  The ALJ further determined that her alleged posttraumatic stress disorder (PTSD) and somatoform disorder did not cause more than mild limitation under the "paragraph B" criteria. (Tr. 27). To accommodate Plaintiff's mental impairments, the ALJ "restricted the kind of work that the claimant could have performed to simple instructions and low level detail instructions and precluding complex instructions, the setting in which she could have worked restricted to no fast pace or strict production demands, and the social interaction that she could have tolerated on the job limited to occasional interaction with the general public and with coworkers on a superficial level, meaning any interpersonal interaction is incidental to the work being performed, no teamwork or tandem task and occasional interaction with supervisors. "  (Tr. 49).

In formulating that RFC, the ALJ explicitly rejected the August 2017 work-preclusive opinions of Plaintiff's treating psychiatrist. Dr. Khallily opined that Plaintiff had "marked" limitations in virtually every broad functional area.  By contrast, the ALJ found "moderate" limitations consistent with the opinions of examining and non-examining state agency consultants.  The ALJ reasonably concluded that Dr. Khallily's opinions were not entitled to controlling weight because they were inconsistent with substantial evidence in the record as a whole.

> The undersigned gives the opinion of Cyna Khallily, M.D., who completed a Mental Impairment Questionnaire dated August 10, 2017, limited weight, as the degree of limitation opined is inconsistent with the overall medical

evidence of record (19F). Dr. Khallily opined the claimant had marked limitation in understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Of note, in November 2017, the claimant was found oriented times three, in no distress, and with normal mood, affect, and behavior…. Likewise, in September and November 2017, the claimant was observed with normal mood and affect, normal behavior, normal thought content, and was described as alert and oriented times three with normal ambulation and speech…. Additional records dated November 2017 note the claimant was alert and well groomed…. Prior records detail similar findings…. The claimant reported her mood as "I am good", and found oriented times three with intact memory, intact attention and concentration, average fund of knowledge, intact insight and judgment and she denied SI/HI, reporting that she would like to stay sober….

(Tr. 47).

Plaintiff asserts without elaboration that the ALJ's analysis does not constitute 'good reasons" for failing to accept Dr. Khallily's opinions. I disagree. Taking a longitudinal view, the ALJ cited to numerous records that expressly contradicted Dr. Khallily's more extreme opinions. For example, the ALJ discussed treatment records that assessed "relatively normal psychiatric functioning" between March 2015 and June 2019. (Tr. 38, *see also generally*, Tr. 39-40, discussing multiple records reflecting normal speech, mood and affect, normal behavior and normal judgment and thought content). The ALJ also pointed out that Plaintiff reported difficulty finding employment due to her legal history, including multiple convictions, rather than because of any physical or mental limitations. (Tr. 38, citing Tr. 2120). And Plaintiff admittedly possessed sufficient mental health skills to interview for and obtain a housekeeping job in 2015, albeit a short-lived one. The ALJ also discussed records indicated that Plaintiff's psychiatric medications were deemed effective. (*See generally* Tr. 39, 1239, 1241-47, 1485, 1490-14496, 1498-99, 1501, 1503-04, 1506-09). In addition, Plaintiff herself discounted her July 2015 psychiatric hospitalization, testifying that she had not attempted suicide but that her roommate had slipped drugs into her drink. (Tr. 39). By October 2016, she reported

20

doing "very well" after being released from the Justice Center, though her symptoms had increased during her incarceration due to a lack of medication. (Tr. 39, 1483). In June 2018, she reported that having her grandchildren stay with her "was aiding in her desire to stay level headed on her meds." (Tr. 48).

In addition to the many clinical records discussed by the ALJ that contradicted Dr. Khallily's opinions, the ALJ reasonably evaluated other mental health opinion evidence when formulating Plaintiff's mental RFC. The ALJ gave only "limited weight" to a March 2010 consultative psychological evaluation that found moderate limitations,(*see* Tr. 38), despite finding it to be "generally consistent with signs and findings on evaluation," because it was a one-time examination that was "remote" in time. (Tr. 40-41). The ALJ relied more heavily on the 2015 and 2016 opinions of two reviewing agency psychologists who also found moderate limitations. (Tr. 303, 309-324). Plaintiff errs in stating that the ALJ gave them only "limited weight" which Plaintiff does not challenge but describes as "correct." (Doc. 7 at 6).[12] The ALJ actually gave their opinions "some weight," explaining that her only disagreement was with the state agency consultants' failure to find any severe mental impairment. By contrast, the ALJ found an affective disorder and an anxiety disorder to be severe impairments. The ALJ otherwise agreed with the consulting psychologists' assessment of moderate limitations, finding their opinions to be "based on and generally consistent with the medical evidence of record" except as modified by the ALJ. (Tr. 49). The ALJ's decision indicates that she evaluated all the later submitted evidence in weighing the opinion evidence and formulating Plaintiff's RFC. *See*

---

[12] In another inaccuracy, Plaintiff asserts that Dr. Khallily "is the only [mental health] opinion after…January 2016." (Doc. 7 at 11). The record reflects that the ALJ assessed three additional mental health opinions after that date. The ALJ gave "[n]o weight" to the opinion of Van Pham, Psy.D., (Tr. 44), and "little weight" to the opinions of James Butcher, Ph.D. and David Moss, LISW. (Tr. 47-48).

*generally*, *McGrew v. Com'r of Soc. Sec.*, 343 Fed. Appx. 26, 32 (6th Cir. 2009). On the record presented, the ALJ's analysis of the opinion evidence and formulation of Plaintiff's mental RFC satisfies the "substantial evidence" standard.

### 2. The Evaluation of Fibromyalgia

Plaintiff criticizes the ALJ's evaluation of her fibromyalgia, arguing that the ALJ erred by focusing on the "lack of objective findings" (Doc. 7 at 8) and by "failing to note that this condition waxes and wanes." (Doc. 7 at 12). However, Plaintiff does not point to any specific evidence to support this argument.

The ALJ appropriately discussed the fact that the discussions of fibromyalgia referenced only "> 7" tender points, because SSR 12-2p states that fibromyalgia must be established by at least 11 positive tender points bilaterally on physical exam, both above and below waist level, by an acceptable medical source. In Plaintiff's case, the diagnosis appears in the medical record but that record "does not confirm that she had the requisite number of tender point findings" or who made the diagnosis in a way that is consistent with the criteria of SSR 12-2p. The same criteria requires consideration that other disorders that could cause the same symptoms or signs have been excluded. The ALJ noted that only on one occasion in January 2017 did Dr. Welford note multiple areas of pain without identifying either locations or specific tender points. (Tr. 47). The ALJ further pointed out that Plaintiff denied many symptoms associated with fibromyalgia. (Tr. 47). In December 2015, Plaintiff stated that her fibromyalgia was improved with Lyrica. (Tr. 34, 2393). She also testified that she was being treated with Gabapentin. (Tr. 31, 159).

In a brief argument, Plaintiff points to a note that references "fatigue" to support her allegation of disabling fibromyalgia fatigue. However, the note is from a record where Plaintiff was being treated for an acute upper respiratory infection and had about five days

22

of a cough, runny nose and all over body aches. (Tr. 2317-18). In many other records, Plaintiff denied fatigue. (*See*, *e.g.*, Tr. 1555, 1576, 1596, 1652, 1729, 2155, 22163, 2175, 2221, 2324, 2444, 2680, 2835, 2893). In summary, the ALJ appropriately focused on clinical records documenting Plaintiff's fibromyalgia. Substantial evidence supports the ALJ's determination that Plaintiff's fibromyalgia was not disabling and did not require greater functional limitations.

### 3. Additional Mental and Physical Complaints

In her third claim, Plaintiff argues that the ALJ erred by failing to recognize her PTSD as a "severe" impairment and/or to adequately consider her chronic pain complaints. I disagree. First, a failure to find a "severe" impairment at Step 2 will not usually require reversal where an ALJ has determined the existence of other severe mental impairments and progressed through the sequential analysis. *See Maziarz v. Secretary of Health and Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987); 20 C.F.R. § 404.1520. Here, the ALJ found two severe mental health impairments and included significant mental limitations in the RFC pertaining to interactions with the public, with supervisors and with co-workers. Plaintiff's cursory argument that her alleged PTSD would support greater restrictions is unconvincing.

Plaintiff's arguments concerning her pain complaints are equally unpersuasive. The ALJ found myofascial pain and fibromyalgia as severe impairments, along with additional severe impairments expected to cause foot pain, hip pain, and back pain. Plaintiff fails to explain how the inclusion of "chronic pain disorder" would have altered the ALJ's analysis of Plaintiff's subjective pain complaints on the record presented. The key issue in this case is whether the degree of pain that Plaintiff chronically experiences is disabling. The ALJ carefully explained why she believes Plaintiff's pain is not disabling.

For example, on November 28, 2017, Plaintiff's treating physician Timothy Burroughs, M.D., noted that Plaintiff's pain was stable and controlled with current medications.  (Tr. 42, citing Tr. 2769, 2772-73; *see also* Tr. 2775 noting that medications "are helping to control patient['s] pain and increasing functionality with improved activity level.  Denies any major side effects….").  Although Plaintiff complained of pain at an ER visit two weeks earlier, that visit was precipitated by heavy lifting while moving houses which led to an exacerbation of back and foot pain.  (Tr. 42, 2220; *see also* Tr. 2224).  Less than 2 weeks later, her treating physician noted stability on her pain medications and increased functionality with improved activity level. (Tr. 2775).  Clinical notes reflected no acute findings, and a lack of systemic complaints or neurological deficits.  (Tr. 42, 2224).

 Beginning in February 2019 and continuing through the following months, Plaintiff reported 50-75% pain relief with injections, decreased pain with medication without side effects, and increased activities of daily living and mobility.  (Tr. 45, 3434, 3439, 3444, 3447).  In May 2019, she had grossly normal musculoskeletal range of motion and strength, normal gait and no edema.  (Tr. 45, 3471).  A subsequent exam showed normal muscle strength in upper and lower extremities and intact sensation.  (Tr. 41, 3479).  She exhibited no pain behaviors throughout 2019, and at her appointments in February, March, April and May, she was not using a cane.  (Tr. 45-46, 3435, 3440, 3445, 3448, 3456).  In June 2019 she again had grossly normal musculoskeletal range of motion and strength despite presenting with a boot on her left leg and a cane. (Tr. 446, 3486-87).  By July 2019, she was again not using any assistive device and had no difficulty arising from a seated position or ambulating as she entered and exited the hearing room.  (Tr. 46).

### 4.  The ALJ's Analysis of Plaintiff's Subjective Complaints

Plaintiff's fifth claim of error is closely related to the above fibromyalgia and chronic pain complaints. Plaintiff argues that, in discounting her subjective complaints, the ALJ overemphasized daily activities that could be performed at her own pace at home.  (Doc. 7 at 12).  However, Plaintiff ignores the fact that taking public transportation and shopping are not done at home.  Similarly, Plaintiff complains that the ALJ failed to state that her last attendance at a Bible study was in 2017 but does not acknowledge that 2017 is still 6 years beyond her alleged onset of disability.  She complains that interactions with family members should not be viewed as equivalent to the ability to relate to supervisors or co-workers, but ignores the fact that the ALJ included significant limitations on Plaintiff's social interactions in the workplace.  She asserts that the ALJ was wrong to cite to her demeanor but the ALJ's explicitly stated that her observations did not constitute "substantial evidence" but were considered only in combination "with other inconsistencies present in the record" and given only "slight weight." (Tr. 40).  Last, Plaintiff argues that the fact that she has tried many treatment modalities supports the credibility of her pain complaints under SSR 16-3p.

I find no error.  Judicial deference is particularly important in evaluating subjective complaints.   The assessment of such symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added). SSR 16-3p emphasizes that "our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court

25

litigation." *See id.* at *11. Under SSR 16-3p, an ALJ is to consider all of the evidence in the record in order to evaluate the limiting effects of a plaintiff's symptoms. *Id.*, 2017 WL 5180304, at *7-8 (listing factors); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c) and former SSR 96–7p. However, SSR 16-3p was not intended to substantially change existing law. *See Banks v. Com'r of Soc. Sec.*, Case No. 2:18-cv-38, 2018 WL 6060449 at *5 (S.D. Ohio Nov. 20, 2018) (quoting explicit language in SSR 16-3p stating intention to "clarify" and not to substantially "change" existing SSR 96-7p), adopted at 2019 WL 187914 (S.D. Ohio Jan. 14, 2019).

It remains the province of the ALJ and not the reviewing court, to assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See generally Rogers v. Com'r*, 486 F.3d at 247. Thus, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). A credibility/consistency determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Plaintiff offers no "compelling" evidence that would require reversal of the ALJ's evaluation of her subjective complaints.

### 5. The Vocational Expert's Testimony

Plaintiff's final claim is based upon the preceding claims. She asserts that the ALJ failed to include all limitations endorsed by either Dr. Welford and Khallily, and the postural limitations endorsed by Dr. Rahn that would have limited her to sedentary work. However, the undersigned has rejected the referenced claims of error and concludes that the RFC determination is substantially supported. A vocational expert's testimony will provide substantial evidence to affirm a nondisability finding so long as all relevant limitations are

included in the description of the RFC conveyed in the hypothetical question posed to the VE. *Howard v. Com'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir.2002).

Plaintiff alternatively argues that even though the VE testified that the jobs that he identified were the same as those listed in the Dictionary Occupational Titles, the bus monitor job is not. However, the ALJ specifically confirmed with the VE that his testimony was consistent with the DOT. (Tr. 93). Plaintiff did not cross-examine regarding this point. Therefore the ALJ was permitted to rely on the VE's testimony. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003). In any event, the VE testified to a significant number of jobs even if the bus monitor judge were excluded.

Last, Plaintiff complains that the DOT job descriptions are outdated, and advocates for use of the O*NET vocational information instead. (Doc. 7 at 14). However, the Sixth Circuit has clarified that the law supports reliance on DOT information and does not require comparison with O*NET information. See *O'Neal v. Com'r of Soc. Sec.* (*O'Neal II*), 799 Fed. Appx. 313, 317 (6th Cir. 2020) (noting that in 2010, the SSA "determined that O*NET in its current form was not suitable or disability claims adjudication" and that regulations clearly favor use of the DOT); *accord Kyle v. Com'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010); SSR 00-4p, 2000 WL 1898704 at *2 (Dec. 4, 2000). .

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT:** the decision of the Commissioner to deny Plaintiff DIB benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole.

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

27

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DIONNE LAMBERT,

      Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Case No. 1:20-cv-234

Cole, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).