UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DIONNE L.,

      Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

Case No. 1:20-cv-234
JUDGE DOUGLAS R. COLE
Magistrate Judge Bowman

## OPINION AND ORDER

This cause comes before the Court on the Magistrate Judge's June 10, 2021, Report and Recommendation ("R&R") (Doc. 11), which recommends that this Court affirm the Commissioner of Social Security's ("Commissioner") decision denying Plaintiff social security disability benefits. For the reasons more fully set forth below, the Court **OVERRULES** Plaintiff's Objection (Doc. 12), **ADOPTS** the Magistrate Judge's R&R (Doc. 11), and therefore **DISMISSES** Plaintiff's Complaint (Doc. 1) **WITH PREJUDICE**.

## BACKGROUND

Plaintiff applied for social security disability benefits in June 2015. (*See* R&R, Doc. 11, #3597). Social Security Administration ("SSA") personnel denied her claim, both initially and upon reconsideration. (*Id.*). Plaintiff challenged that decision before an SSA Administrative Law Judge (the "ALJ"), who held two evidentiary hearings—one on February 13, 2018, and the other on March 27, 2018. (*Id.*). Roughly two months later, on May 24, 2018, the ALJ issued a decision denying benefits (*Id.* at #3597–98).

But the SSA Appeals Council ("Appeals Council") reversed that decision, concluding the ALJ had failed to properly explain the weight afforded to an opinion submitted by one of Plaintiff's treating physicians, Dr. Welford. (*Id.* at #3609). The Appeals Council therefore remanded the case to the ALJ for further consideration of that opinion. (*Id.* at #3598).

On remand, the ALJ held additional hearings on December 13, 2018, on March 14, 2019, and on July 9, 2019. (*Id.*). On September 18, 2019, the ALJ issued a second decision, again denying benefits. (*Id.*). The Appeals Council declined to review the ALJ's second decision, making it the Commissioner's final decision. (*Id.*).

On March 23, 2020, Plaintiff filed a Complaint asking this Court to reverse the SSA's final decision (i.e., the ALJ's second decision). (*See* Doc. 1). The Court assigned the matter to a Magistrate Judge under Southern District of Ohio Civil Rule 72.2. *See also* Cincinnati Gen. Order No. 14-01 (referring appeals from decisions of the Commissioner of Social Security regarding Social Security benefits to Magistrate Judges).

On August 26, 2020, Plaintiff filed her Statement of Specific Errors (Doc. 7). While she claimed that the ALJ erred in a number of ways in denying benefits, those alleged errors fell into three general categories.

First, Plaintiff argued that the ALJ committed various errors in assigning weight to medical evidence in the record regarding Plaintiff's physical and mental capacities. Specifically, Plaintiff argued that the ALJ erred by failing to credit all of the conclusions offered by three of Plaintiff's treating doctors, a podiatrist (Dr.

2

Rahn[1]), an internal medical specialist (Dr. Welford), and a psychiatrist (Dr. Khalily). (*See id.* at #3555–56). According to Plaintiff, the ALJ's failure to afford those three medical providers' opinions proper consideration in turn led the ALJ to make erroneous findings about the impact of Plaintiff's fibromyalgia, nervous impairments, and mental impairments on Plaintiff's ability to work. (*See id.* at #3553–54).

Second, Plaintiff argued that the ALJ erred by not fully crediting Plaintiff's subjective complaints of pain in connection with her fibromyalgia. (*Id.* at #3557–58).

Third, Plaintiff argued that the ALJ erred in crediting a vocational expert's testimony regarding the nature of the representative job "Bus Monitor" that the ALJ found Plaintiff could perform with her physical and mental limitations. (*Id.* at #3559–60).

On June 10, 2021, the Magistrate Judge issued an R&R (Doc. 11), recommending that this Court affirm the SSA's determination and close Plaintiff's case. On June 18, 2021, Plaintiff filed a timely Objection (Doc. 12). The Commissioner did not respond to Plaintiff's Objection (Doc. 12). The matter is now before this Court.

## LEGAL STANDARD

If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept,

---

[1] Plaintiff mistakenly refers to him as "Dr. Rahm." (*See* R&R, Doc. 11, #3605).

3

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

But that is not the only relevant standard of review here. In this case, the Magistrate Judge was reviewing a decision by an ALJ employed by the SSA. Judicial review of such decisions is quite constrained. In particular, courts are "limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ...."). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ealy*, 594 F.3d at 512. So long as substantial evidence supports the Commissioner's conclusion, the Court should affirm, even if substantial evidence in the record would also support a different conclusion. *Id.*

However, even if supported by substantial evidence, a decision should not be affirmed if "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Putting all that together, this Court's job is to review de novo whether the Magistrate Judge was correct in determining

that the ALJ's decision applied the correct legal standards (including the SSA's own regulations) and was supported by substantial evidence.

## LAW AND ANALYSIS

For purposes of Social Security disability benefits, a disability is defined in relevant part as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). By regulation, the SSA has developed a five-step analysis to determine whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2] As relevant here, to be entitled to benefits, a claimant may not be gainfully employed, and must have one or more severe, medically determinable physical or mental impairments. *See id.* The SSA considers some impairments, listed in a regulatory appendix, to be so severe that they automatically entitle a claimant to benefits. *See id.* But if a claimant's impairment, or its equivalent, does not appear on the SSA's list, then the SSA must consider whether the claimant can work, either by continuing to do the kind of work the claimant has done in the past (if any), or by making an adjustment to a new kind of work. *See id.* If so, the claimant is not disabled. *See id.*

Here, the ALJ concluded that Plaintiff was not disabled because she could perform "light work," with some further restrictions, as defined in applicable SSA regulations. (*See* R&R, Doc. 11, #3599–600); *see also* 20 C.F.R. § 404.1567(b) (defining

---

[2] The first of these regulatory sections applies to applications for disability insurance benefits, the second to applications for Supplemental Security Income disability benefits. *Compare* 20 C.F.R. § 404.1520(a)(2), *with* § 416.920(a)(2). Their requirements are identical in all respects relevant here.

"light work"). In reaching that conclusion, the ALJ largely agreed with the medical opinions of state agency consultants. (*See* R&R, Doc. 11, #3604–05; ALJ Decision, First Certified Admin R. ("R.") Ex. 2, Doc. 6-2, #83). Plaintiff objects to that determination chiefly on the grounds that the ALJ afforded insufficient weight to certain treating physician opinions that would support further restrictions on Plaintiff's capacity to work that the ALJ did not adopt. (*See generally* Obj., Doc. 12, #3625–31). Plaintiff also objects to the ALJ's reliance on the testimony of a vocational expert regarding the job duties of a "bus monitor," one of the representative jobs that the ALJ found Plaintiff could perform given her work capacity restrictions. (*Id.* at #3632–33).[3]

Neither argument has merit. As further detailed below, substantial evidence supports the ALJ's assignment of weight to the medical evidence in the record, and the ALJ adequately explained her assignments of weight to the opinions of Plaintiff's treating doctors. Moreover, the ALJ did not commit reversible error in relying on the vocational expert's testimony about the job duties of a bus monitor.

**A.   The ALJ Did Not Err In Considering The Opinions Of Plaintiff's Treating Doctors.**

When a medical opinion comes from a treating physician, an ALJ of the SSA must give that opinion "controlling weight" if it is well-supported by medically acceptable techniques and consistent with other substantial evidence in the record. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). If an ALJ

---

[3] Unlike in her Statement of Specific Errors, Plaintiff does not separately object to the ALJ's consideration of Plaintiff's subjective complaints of pain. (*See generally* Obj., Doc. 12).

determines that the opinion of a treating physician should receive less than controlling weight, the ALJ must give "good reasons" for the weight the ALJ does afford the opinion. *See* 20 C.F.R. § 404.1527(c)(2). Good reasons for an ALJ to give less than controlling weight to the opinions of a treating physician include lack of support for the opinion or inconsistency between the opinion and other evidence in the record. *See* Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996). If the ALJ declines to afford the opinion controlling weight, the ALJ should determine how much weight is appropriate by considering factors such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

Here, Plaintiff's principal challenge to the ALJ's conclusion that she can perform "light work," and therefore is not disabled, is that the ALJ did not credit all of the opinions of three of Plaintiff's treating doctors—her podiatrist, Dr. Rahn, her physician, Dr. Welford, and her psychiatrist, Dr. Khalily. There is no question that each of those sources was among Plaintiff's treating doctors. Therefore, the question for the Court is whether the ALJ's assignments of less than controlling weight to the opinions of these doctors were supported by substantial evidence, and whether the ALJ gave good reasons in each instance for the weight the ALJ elected to afford the opinion. The Court addresses this issue with respect to each doctor's opinions in turn.

1. **Substantial Evidence Supports The ALJ's Decision To Give Less Than Controlling Weight To Dr. Rahn's Opinions Limiting Plaintiff To Sedentary Work, And The ALJ Gave Good Reasons For Doing So.**

Plaintiff objects that the ALJ erred in failing to include limitations on Plaintiff's capacity for work that Dr. Rahn opined were present based on two separate examinations he performed on Plaintiff. First, Plaintiff argues that the ALJ should have accepted Dr. Rahn's July 2017 opinion that Plaintiff was capable of no more than two hours of standing or walking per day, which under applicable SSA regulations would have made Plaintiff incapable of "light work" and instead capable only of "sedentary work." (*See* Obj., Doc. 12, #3625–27 (citing 20 C.F.R. § 404.1567(a)); R&R, Doc. 11, #3605). But, as the Magistrate Judge explains, the ALJ declined to accept that conclusion as indicative of Plaintiff's long-term work capacity because the July 2017 examination occurred shortly after Dr. Rahn had conducted surgery on Plaintiff's right foot. (R&R, Doc. 11, #3605; *see also* ALJ Decision, First Certified Admin. R. ("R.") Ex. 2, Doc. 6-2, #77). The ALJ reasoned that Dr. Rahn's examination at a time when Plaintiff was "postop" was not indicative of Plaintiff's normal ability to stand or walk. (*See* ALJ Decision, R. Ex. 2, Doc. 6-2, #77). Moreover, the July 2017 examination form itself indicated that Dr. Rahn did not expect Plaintiff's walking or standing limitation to be permanent: her prognosis was "good." (*See* Rahn July 2017 Statement, R. Ex. 8, Doc. 6-8, #1583). Given the record here, the Court concludes that substantial evidence supported the ALJ's decision to assign Dr. Rahn's opinion "considerable" weight. And, relatedly, the ALJ's explanation provided "good reasons" for declining to afford the opinion at issue controlling weight. *See* 20 C.F.R.

§ 404.1527(c)(2). In short, the ALJ found the proffered opinions only partially consistent with the record as a whole. (*See* ALJ Decision, R. Ex. 2, Doc. 6-2, #78); *see also Blakley*, 581 F.3d at 406. Under the deferential standard of review here, the Court certainly cannot say that decision was an error.

Plaintiff next argues that the ALJ should have accepted the work capacity limitations as to which Dr. Rahn opined based on his November 2018 examination. Namely, he again found that Plaintiff could walk or stand for only two hours per day. (*See* Obj., Doc. 12, #3627). The ALJ gave Dr. Rahn's opinions from his November 2018 examination only "some weight" because some of the opinions were inconsistent with other evidence in the record and in tension with Dr. Rahn's own findings. (*See* ALJ Decision, R. Ex. 2, Doc. 6-2, #80–81). For example, Dr. Rahn found that Plaintiff could not use standard public transportation or carry out activities such as shopping for groceries, but Plaintiff admitted that she does perform those activities. (*Id.* at #80). Plaintiff also reported to Dr. Rahn that she had been watching her grandson during the days immediately before Plaintiff's November 2018 visit with Dr. Rahn, which the ALJ found "not entirely consistent" with Dr. Rahn's opinion that Plaintiff could rarely stoop, crouch, or squat. (*Id.*). Moreover, other medical records postdating the November 2018 visit indicate Plaintiff reported improvement in mobility with use of medications and 70% less pain. (*Id.*). The ALJ also noted, as one consideration among others, Plaintiff's apparent absence of any difficulty standing and sitting without an assistive device at her hearings. (*Id.*). For these and other reasons discussed at length in the ALJ's decision, the ALJ permissibly gave only "some weight" to Dr. Rahn's

November 2018 opinion, and did not adopt Dr. Rahn's conclusion that Plaintiff could walk or stand for only two hours a day.

To be sure, Plaintiff emphasizes medical evidence in the record that points to some continued difficulties walking or standing. For example, in a May 2019 examination, Plaintiff stated that her pain was still a 7, and she had some self-reported difficulties with ambulation. (*See* Obj., Doc. 12, #3628 (citing 5/21 Tayeb Visit Notes, R. Ex. 12, Doc. 6-12, #3480)). But even if there was some evidence in the record from which a reasonable mind could have reached a different conclusion as to Plaintiff's capacity to walk or stand, substantial evidence supports the ALJ's thorough consideration of Dr. Rahn's November 2018 opinion, and the ALJ gave good reasons for giving it only "some" weight under the SSA's guidelines. (*See* ALJ Decision, R. Ex. 2, Doc. 6-2, #80); *see also Ealy*, 594 F.3d at 512; *Blakley*, 581 F.3d at 406.

Moreover, even if the ALJ had given controlling weight to Dr. Rahn's opinion that Plaintiff could stand or walk for no more than two hours per day, that would not necessarily have changed the ALJ's conclusion that Plaintiff can perform the representative jobs of "bus monitor," "weights, measure checker clerk," or "hand sorter/grater." (*See* ALJ Decision, R. Ex. 2, Doc. 6-2, #85). That is because the vocational expert testified that Plaintiff could perform those jobs either sitting or standing. (*See* Hr'g Tr., R. Ex. 2, #106). Accordingly, even if it was error for the ALJ to decline to give controlling weight to Dr. Rahn's opinions, which the Court has determined was not the case here, any error was likely harmless. *See Clore v. Astrue*,

10

No. 1:08CV77-J, 2009 WL 1010875, at *4 (W.D. Ky. Apr. 14, 2009) (failure to give controlling weight to treating physician's opinion limiting claimant to sedentary work at most harmless where evidence established claimant could do significant number of sedentary jobs).

> 2. **Substantial Evidence Supports The ALJ's Decision To Give Only "Limited" Weight To Dr. Welford's Opinions Finding Work-Preclusive Physical Limitations, And The ALJ Gave Good Reasons For Doing So.**

Plaintiff next argues that the ALJ erred in giving less than controlling weight to August and September 2017 opinions of Plaintiff's treating physician, Dr. Welford. In part due to a diagnosis of fibromyalgia, Dr. Welford found that Plaintiff "could not walk a block at a reasonable pace on rough or uneven surfaces; could not use standard public transportation; could not carry out routine ambulatory activities; and could not climb several stairs at a reasonable pace with the use of only a single handrail." (*See* ALJ Decision, R. Ex. 2, Doc. 6-2, #76). Dr. Welford found numerous additional work-preclusive restrictions, including that Plaintiff could sit for only two hours, would need to walk for 1–2 minutes every twenty minutes, would need at least 4–5 unscheduled fifteen-minute breaks per day, and would be absent at least four days per month. (*Id.*). Dr. Welford based these conclusions in part on a functional capacities evaluation conducted by a physical therapist in August 2017, which Dr. Welford adopted and which therefore counts as the opinion of a treating doctor. *See Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 553 (6th Cir. 2020).

11

Notably, Dr. Welford's conclusions conflict with, and are more restrictive than, those of Dr. Rahn, who was also one of Plaintiff's treating doctors. (*See id.* at #80–81). Therefore, the ALJ could not simultaneously give "controlling weight" to both.

The ALJ gave the opinions of Dr. Welford only "limited weight" because they were "inconsistent with the overall medical evidence of record and the claimant's own reports." (*Id.* at #76). For example, Plaintiff admitted that she did walk and use public transportation to travel and also shopped for groceries. (*Id.*). The ALJ noted a lack of citation to specific support for many of Dr. Welford's conclusions in his September 2017 evaluation; instead, the form merely invites the reader to "refer to physician." (*Id.*). As in the case of Dr. Rahn's opinions, the ALJ noted that Dr. Welford's August 2017 opinions were from shortly after the surgery on Plaintiff's right foot, such that they were unlikely to represent Plaintiff's normal physical capacities after recovery. (*See id.* at #79). With respect to fibromyalgia, the ALJ cited the SSA's specific regulation on the topic, and noted that Dr. Welford apparently had not followed that regulation's directives to "definitively confirm that the claimant has the requisite number of tender point findings and … exclude[] other impairments." (*Id.* at #81–82 (citing Soc. Sec. Ruling 12-2p, 2012 WL 3104869, at *3 (July 25, 2012))). Substantial evidence supported the ALJ's assignment of only "limited" weight to Dr. Welford's opinions, and the ALJ gave "good reasons" not to afford controlling weight.

Relatedly, the ALJ's failure to include "chronic pain disorder" among Plaintiff's severe impairments was not reversible error. (*See* Obj., Doc. 12, #3630). The ALJ considered the issue of whether Plaintiff's pain was disabling in considering

12

Plaintiff's myofascial pain and fibromyalgia, both of which the ALJ did find to be severe (albeit not disabling) impairments. (*See* ALJ Decision, R. Ex. 2, Doc. 6-2, #61; *see also* R&R, Doc. 11, #3619). The ALJ concluded that Plaintiff's resulting pain was not disabling. Plaintiff may disagree with that conclusion, but merely appending "chronic pain disorder" to Plaintiff's list of impairments would not have changed the substance of Plaintiff's limitations. *See Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (failure to find one impairment severe at most harmless error where ALJ found other relevant severe impairments and considered Plaintiff's condition in connection with those impairments).

In short, the ALJ's thorough discussion of Dr. Welford's opinions reveals the limited support those opinions find in, or even their outright inconsistency with, the record as a whole, including Plaintiff's own statements and the opinions of another treating doctor, Dr. Rahn. Accordingly, substantial evidence supports the ALJ's decision to give Dr. Welford's work-preclusive opinions only "limited weight," and the ALJ gave good reasons for that decision.

    **3.    Substantial Evidence Supports The ALJ's Decision To Give Only "Limited" Weight To Dr. Khalily's Findings of Work-Preclusive Mental Limitations, And The ALJ Gave Good Reasons For Doing So.**

In an August 2017 Mental Impairment Questionnaire, Dr. Khalily opined that Plaintiff has "marked" limitations in virtually every broad functional area of mental capacity including "understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself." (ALJ Decision, R. Ex. 2, Doc. 6-2, #82; *see also* R&R, Doc. 11,

#3615). The ALJ gave that opinion "limited weight" because it was inconsistent with evidence in the record as a whole. That evidence included both the opinions of state agency consultants who assessed "normal psychiatric functioning" and the fact that Plaintiff attributed her difficulties finding work to her criminal history rather than to any mental limitations. (ALJ Decision, R. Ex. 2, Doc. 6-2, #74–75). The ALJ also considered ample record evidence that Plaintiff's psychiatric medications were effective. (*See id.*). Finally, the ALJ noted that Plaintiff had successfully interviewed for a housekeeping job in 2015. (*Id.* at #61). Because evidence in the record as a whole showed more moderate mental limitations, the ALJ was not required to accept Dr. Khalily's extreme conclusions that Plaintiff displayed "marked" limitations in virtually every broad functional area. *See Ealy*, 594 F.3d at 512.

Nevertheless, Plaintiff objects that the ALJ erred in failing to include PTSD in the list of Plaintiff's "severe" impairments. As before, the error, if any, in failing to include that label was harmless. *See Maziarz*, 837 F.2d at 244. The ALJ extensively considered Plaintiff's mental limitations in connection with the severe impairments the ALJ did find, which included "affective disorder" and "anxiety disorder." (ALJ Decision, R. Ex. 2, Doc. 6-2, #61). Plaintiff argues that comparing those impairments to PTSD is "like comparing apples to oranges." (Obj., Doc. 12, #3631). But that misses the point. The ALJ's inquiry required determining the extent of Plaintiff's mental limitations, which the ALJ did in connection with the mental impairments the ALJ did find. Hence, even if Plaintiff's mental limitations are in fact due in greater part to PTSD than to anxiety or affective disorder, as Plaintiff now argues (*see id.*), that

14

would not mean that the *extent* of those limitations was any greater than the ALJ found to be the case.

Accordingly, substantial evidence supports the ALJ's decision to give only "limited" weight to Dr. Khalily's opinions finding work-preclusive mental limitations, and the ALJ gave good reasons for doing so.

**B. The ALJ Did Not Err In Relying On The Vocational Expert's Testimony About The Job Of "Bus Monitor," And Any Error Was Harmless.**

Plaintiff argues that the ALJ erred because vocational expert testimony that the job of "bus monitor" could be performed sitting down at a bus depot was inconsistent with the Dictionary of Occupational Titles, which envisions a job oriented toward keeping unruly schoolchildren in order on a school bus. (Obj., Doc. 12, #3632). There are a few problems with that argument. First, a vocational expert is not bound by the job descriptions contained in the Dictionary of Occupational Titles, and an ALJ may rely on a vocational expert's testimony even when it conflicts with the information contained in that source. *See Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (citing *Conn v. Sec'y of Health and Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995)). Second, Plaintiff failed to cross-examine the vocational expert regarding the duties of a bus monitor. (*See* R&R, Doc. 11, #3623). Third, even if the ALJ had erred, any error was harmless, as the ALJ also found other representative jobs Plaintiff could perform. *See Wright*, 321 F.3d at 616. Accordingly, Plaintiff's objection to this aspect of the ALJ's decision has no merit.

Plaintiff's other purported objection to the vocational expert's testimony, that the ALJ's hypothetical questions failed to include all of Plaintiff's true physical and mental limitations, only rehashes Plaintiff's earlier arguments that the ALJ erred in failing to give sufficient weight to certain opinions of Plaintiff's treating doctors, an issue discussed above. (*See* Obj., Doc. 12, #3633).

## CONCLUSION

Based on the foregoing, the Court **OVERRULES** Plaintiff's Objection (Doc. 12), **ADOPTS** the Magistrate Judge's R&R (Doc. 11), **DISMISSES** Plaintiff's Complaint (Doc. 1) **WITH PREJUDICE**, and **DIRECTS** the Clerk to enter judgment and **TERMINATE** this case on its docket.

**SO ORDERED.**

February 4, 2022
**DATE**                                                                **DOUGLAS R. COLE**
                                                                 **UNITED STATES DISTRICT JUDGE**